David H. Krieger, Esq.
Nevada Bar No. 9086
Shawn Miller, Esq.
Nevada Bar No. 7825
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Charles L. Geisendorf, Esq.
Nevada Bar No. 6985
CHARLES L. GEISENDORF, LTD.
2470 St. Rose Parkway, Suite 309
Henderson, Nevada 89074
Phone: (702) 873-5868
Email: charles@clgltd.com

*Attorneys for Plaintiffs*
*RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA, <br><br> Plaintiffs, <br><br> v. <br><br> SILVER STATE TRUSTEE SERVICES, LLC, <br><br> Defendants. | Case No. : 2:18-cv-00552-APG-PAL <br><br> **STIPULATION AND ORDER TO AMEND THE COMPLAINT** <br><br> **(First Request)** |

Plaintiffs RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA (hereinafter "Plaintiff") and Defendant SILVER STATE TRUSTEE SERVICES, LLC ("Defendant" and collectively the "Parties") respectfully submit the following Stipulation permitting the Plaintiffs to file a second amended complaint (hereinafter "SAC") substantively in the form attached hereto as **Exhibit "1"**.

Further, the parties agree that filing the SAC moots the need for the Court to consider the Defendant's Motion to Dismiss the First Amended Complaint. [ECF No. 15]. Accordingly, Defendant withdraws its pending Motion to Dismiss without waiving any and all defenses and retains all rights to refile a Motion to Dismiss regarding the the SAC; or file an answer within fourteen (14) days of the Court approving this stipulation.

IT IS SO STIPULATED.

Dated February 8, 2019.

/s/ David H. Krieger, Esq
David H. Krieger, Esq.
Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Charles L. Geisendorf, Esq.
Nevada Bar No. 6985
CHARLES L. GEISENDORF, LTD

*Attorneys for Plaintiffs, RYAN
REFORMINA & EFRIN BATAYOLA*

Dated February 8, 2019.

/s/ Michael R. Esposito, Esq.
Michael R. Esposito, Esq.
Erika Pike Turner, Esq.
Garman Turner Gordon LLP
650 White Drive,
Suite 100
Las Vegas, NV 89119

*Attorneys for Defendant, SILVER
STATE TRUSTEE SERVICES, LLC*

## __ORDER__

IT IS SO ORDERED that this Stipulation and Order to Amend the Complaint is hereby GRANTED.

IT IS FURTHER ORDERED, that the Plaintiff shall file the SAC within seven (7) days from the date of entry of this Order.

IT IS FURTHER ORDERED that the Defendant shall have fourteen (14) days to file a responsive pleading to the SAC from the date the SAC is filed.

U.S. MAGISTRATE JUDGE

DATED: February 13, 2019

# EXHIBIT 1

## RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA

### v.

## SILVER STATE TRUSTEE SERVICES, LLC

### Case No. 2:18-cv-00552-APG-PAL

*[SECOND AMENDED COMPLAINT]*

**Filed for the Plaintiff**

**By their attorney:**

**HAINES & KRIEGER, LLC**
**8985 S. Eastern Ave. Ste. 350**
**Las Vegas, NV 89123**

*RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA v. SILVER*
*STATE TRUSTEE SERVICES, LLC, Case No. 2:18-cv-00552-APG-PAL*

David H. Krieger, Esq.
Nevada Bar No. 9086
Shawn Miller, Esq.
Nevada Bar No. 7825
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Charles L. Geisendorf, Esq.
Nevada Bar No. 6985
CHARLES L. GEISENDORF, LTD.
2470 St. Rose Parkway, Suite 309
Henderson, Nevada 89074
Phone: (702) 873-5868
Email: charles@clgltd.com

Attorney for Plaintiffs
*RYAN REFORMINA and EFRIN ALEXIS C. BATAYOLA*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA,<br><br>Plaintiffs,<br>v.<br><br>SILVER STATE TRUSTEE SERVICES, LLC,<br><br>Defendant. | Case No.:  2:18-cv-00552-APG-PAL<br><br>**SECOND AMENDED COMPLAINT** |

For this Second Amended Complaint, the Plaintiffs, RYAN REFORMINA and EFRIN ALEXIS C. BATAYOLA, by undersigned counsel, state as follows:

## JURISDICTION

1.     This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") by the Defendant and its agents in their illegal efforts to collect a consumer debt and jurisdiction is therefore proper in this Court pursuant to 28 U.S.C. § 1331.

2.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in the U.S. District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b), as Defendant transacts business in the State of Nevada.

## PARTIES

4.     The Plaintiffs, RYAN REFORMINA and EFRIN ALEXIS C. BATAYOLA ("Plaintiffs"), are each adult individuals residing in California, and are each a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

5.     Defendant SILVER STATE TRUSTEE SERVICES, LLC  ("Silver State"), is doing business in the State of Nevada as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

6.     SILVER STATE at all times acted by and through one or more of its agents or debt collectors (the "Collectors").

## **GENERAL ALLEGATIONS**

7.      Plaintiffs are the owners of that certain real property commonly known as 1396 Adagietto Drive, Henderson, Nevada 89052, Assessor's Parcel Number 190-06-716-015 (the "Property").

8.      The Property and the Plaintiffs are subject to certain Covenants, Conditions and Restrictions ("CC&R's" or "Governing Documents") recorded by Coventry Homes at Anthem Community Association, Inc. ("CHACA", "Creditor" or "HOA") in the Official Records of the Clark County Recorder's Office in Book 19980626 as Instrument No. 0003098 on June 26, 1998.

9.      CHACA is a common-interest community.

10.      A common-interest community refers to real property to which a person, by virtue of the person's ownership of a unit, is obligated to pay for a share of real estate taxes, insurance premiums, maintenance or improvement of, and other expenses related to common elements of the community.

11.      The Plaintiffs rent the Property to Mr. Conaway ("Tenant").

12.      CHACA has assessed fines ("Debt") against the Plaintiffs alleging that the Tenant has violated the CC&Rs by conducting "business activity" at the Property and parking "commercial vehicles" at the Property, which was false, since no business activity was being conducted and the imposed fines were assessed wrongfully arising out of household property of the Plaintiffs.

13.     The purported Debt arises directly from the personal manner in which Tenant and Plaintiffs have sought to use and enjoy the Property and constitutes a personal, family or household "debt" as that term is defined under 15 U.S.C. §1692a(5).

14.     The Debt was purchased, assigned, or transferred to Silver State for collection, or Silver State was employed by CHACA to collect the Debt.

## ILLEGITIMATE NATURE OF THE DEBT

15.     Starting in 2008, CHACA started issuing improper fines and assessments against the Plaintiffs.

16.     The overwhelming majority of the fines arise from allegations that Tenant was using the Property for business purposes and parking commercial vehicles at the Property.  From September 2013 through May 2017, CHACA issued violation fines—often weekly—falsely alleging Tenant was engaged in business activity or using commercial vehicles at the Property.

17.     Other than conclusory statements that Tenant was engaged in "business activity" and had "commercial vehicles", CHACA did not provide any explanation, support, basis, analysis, reasoning, or any information to support its unsubstantiated belief.

18.     The Tenant did not conduct business activity at the Property.

19.     The unsubstantiated allegations by CHACA that Tenant somehow

violated the CC&Rs prohibition on "business activity" and "commercial vehicles" were belied by Tenant's actual conduct at the Property, but that did not stop CHACA's illegitimate violation campaign against Plaintiffs and Tenant.

20.     CHACA's absurd conclusion that Tenant was conducting business activity and using commercial vehicles at the Property completely ignored the ancillary business exceptions of Section 34.1(b) of the CC&Rs.

21.     CHACA also failed to apply Article III, Section 3.1 of the CC&Rs in a uniform manner, targeting the Tenant in an arbitrary, unreasonable and non-uniform manner.

22.     It was not bad enough that CHACA issued dubious violations, failed to apply existing exceptions to the CC&Rs, and applied the CC&Rs in a non-uniform and arbitrary manner, CHACA also failed to comply with its own obligations and responsibilities in attempting to enforce and collect the Debt.

23.     CHACA sent notices to the wrong address despite having been informed where notices should be sent.

24.     Although CHACA has an obligation to maintain the minutes of all hearings pursuant to NRS 116.3108(8), CHACA was only able to provide the minutes for three hearings regarding violations against the Tenant:  March 27, 2013, August 31, 2015 and October 28, 2015.

25.     Despite repeated requests, CHACA was unable to provide any

guidance or explanation as to the nature and basis for the alleged violations, which was CHACA's burden to show.

26. Pursuant to NRS 116.310315, for each fine imposed, CHACA was required to establish a compliance account record to account for the fine, which "must be separate from any account established for assessments." CHACA improperly merged and consolidated the fine assessment records with their compliance accounting records, which Defendant then improperly sought to collect resulting in this action.

27. Additionally, the violations for "business activity" and "commercial vehicles" were inconsistent in amounts.

28. The fines exceeded the amount allowed under NRS 116.31031(1)(b)(2). CHACA was required to determine whether the alleged violation posed an imminent threat of causing substantial adverse effect on the health, safety or welfare of the residents of the common-interest community and if not, "the amount of the fine must not exceed $100 for each violation or a total amount of $1,000, whichever is less." CHACA had fined Tenant and Plaintiff in excess of $6,000.

29. Despite CHACA's obligation under NRS 116.31031(3) to prepare and deliver a schedule of fines that may be imposed for any violation, CHACA failed to provide the schedule of fines for each year it imposed a violation against Tenant.

CHACA only provided an undated and unsigned Statement of Fines with no proof of mailing attached to a 2016 fine policy, completely ignoring the other years.

30.     Pursuant to NRS 116.31031(4)(a), CHACA was not allowed to impose a fine unless 30 days before the alleged violation, notice of the applicable provisions of the CC&Rs that form the basis of the alleged violation received written notice.  CHACA could not provide or produce these statutorily required notices.

31.     Pursuant to NRS 116.31031(4)(b), CHACA was required to provide written notice to Plaintiffs specifying in detail the alleged violation, the proposed action to cure, the amount of the fine, provide the date, time and location of the hearing on the alleged violation, provide clear and detailed photographs of the alleged violation where possible, and a reasonable opportunity to cure or contest the alleged violation.  CHACA is required to keep these records for at least ten years—NRS 116.31175(7)—but only had notices going back to 2016.

32.     On or about March 3, 2017, counsel for Tenant and having authority from Plaintiffs, again notified CHACA of the factual deficiencies in the fines it imposed against Tenant and Plaintiffs, but also detailed the legal deficiency and improper records relating to the imposed fines as well.

33.     CHACA knew or should have known that a significant portion of the Debt, if not the entire Debt, had no factual support and could not be maintained

based upon its deficient and defective records.

34.     Tenant and Plaintiffs even waited until October 5, 2017 for CHACA to provide all the required records, documentation and support, but CHACA was unable to do so.

## SILVER STATE ENGAGES IN ILLEGAL COLLECTION

35.     The CHACA Debt was assigned to Silver State for collection on or about February 27, 2017.

36.     Upon information and belief, Silver State also received a copy of the March 3, 2017 correspondence that detailed the multiplicity of factual and legal deficiencies.

37.     Silver State knew or should have known that the amount of the Debt was not verifiable and lacked both factual and legal support.

38.     Silver State knew or should have known that Tenant and Plaintiffs disputed the legitimacy of the Debt and that the Debt was comprised of numerous illegal and impermissible fees.

39.     Silver State knew or should have known that CHACA did not have and could not produce all the records, documents and information legally required to support the Debt and therefore the Debt could not be legally enforced by CHACHA, let alone Silver State – making any collection by Silver State on the Debt illegal and a violation of numerous FDCPA provisions.

40.    Silver State knew or should have known that the amount of the Debt exceeded the amount allowed by law and that Plaintiff's did not owe $6,881.00, which was the amount Silver State illegally sought to collect from the Plaintiffs for the Debt.

41.    Silver State knew of should have known that due to the multiplicity of factual and legal deficiencies, the Debt was not due and owing and was not collectible.

42.    Notwithstanding the dubious nature of the Debt, on March 30, 2017, Silver State recorded the Lien against the Property, Instrument No. 20170330-0001506, for failure to pay fines, late fees or other charges owed to CHACA in the amount of $6,881.00 ("Lien").

43.    In the recorded Lien, Silver State informed Tenant and Plaintiffs that the Lien would "remain in place until such time that the outstanding balance of $6,881.00 and any additional monies accrued until the account is paid in full" to Silver State.

44.    Upon information and belief, Silver State caused the Lien to be recorded in reckless disregard to Plaintiffs' rights, knowing the errors and disputes related to the illegality and unenforceability of the Lien.

45.    Not only was the illegality and unenforceability of the Lien at issue, the amount of Debt Silver State was seeking to collect was far beyond the amount

allowed by law.  The Debt could not exceed $100 for each violation or a total amount of $1,000, whichever is less.  NRS 116.31031(1)(b)(2).  However, Silver State's Lien was more than six (6) times this amount (assuming the Debt was enforceable at all, which it wasn't).

46.    In addition to filing the Lien, on or about April 4, 2017, Silver State used an instrumentality of interstate commerce or the mails by sending a demand letter ("Demand Letter") to Plaintiffs.  In relevant part it states:

Dear Homeowner;

Please be advised that the Coventry Homes at Anthem Community Association, Inc. has referred your account to Silver State Trustee Services for the purpose of recording a lien on the above referenced unit due to the nonpayment of Violation fines.

The enclosed copy of the lien reflects the total amount due to bring your account current including fines, late fees, interest, and costs of attorneys fees and or fees of the Agent of the Association.

The title will not be cleared nor will the lien be released until the account is brought current.

To bring your account current send payment of the total amount due, in the form of cashier's check or money order to:

**Silver State Trustee Service, LLC.**
**1424 S. Jones Blvd.**
**Las Vegas, NV  89146**
**702-221-8848**

Sincerely,

Monique D. Washington,
Trustee Officer

**Silver State Trustee Services, LLC is a debt collector attempting to collect a debt and any information that is obtained will be used for that purpose.**

47.    In the Demand Letter, Silver State expressly indicated that it was a "debt collector" and that CHACA had referred Plaintiffs' account to Silver State for collection, and that Silver State was attempting to "collect a debt."

48.    The Demand Letter stated that the $6,881 listed in the Lien (which was attached to the Demand Letter) "reflects the total amount due to bring [the] account current, including fines, late fees, interest, and costs of attorneys fees and or fees of the Agent of the Association."

49.    The Demand Letter also stated that the "title will not be cleared nor will the lien be released until the account is brought current" and that to bring the account current Plaintiffs should "send payment of the total amount due" to Silver State.

50.    On April 14, 2017, CHACA's own counsel was unable to provide complete documentation to support the Debt, yet Silver State (rushing ahead) during this time blindly filed a Lien for the full amount of the Debt based on wrongful violation; arbitrary and non-uniform application of CC&Rs; no supporting pictures or explanation of the violations; deficient, incomplete, missing or misdirected notices, documents, statements, and hearings inconsistent with CHACA's statutory requirements and duties; and a Debt that exceeded the amount allowed by law and was simply not legally owed or enforceable against the Plaintiffs.

51.    Silver State's attempt to collect $6,881 regarding the Debt, when the Plaintiffs did not owe CHACA this amount constituted several violations of 15 U.S.C. §1692e.

52.    Silver Sate misrepresented the amount and character of the Debt violating §1692e(2).

53.    Silver State threatened to take action (recording a Violation Lien against the Property) which it was not legally permitted to take by threatening to collect an amount of a debt which was not owed in violation of §1692e(5).

54.    Silver State used false representations and/or deceptive means to collect the Debt, since it misrepresented what was in fact owed in further violation of §1692e.

55.    Here, Silver State knew the amount it was seeking to collect (more than $6,000) falsely stated the amount which could be lawfully collected from the Plaintiffs.

56.    As a result, Silver State, in its efforts to collect on the consumer Debt misrepresented the amount, status and legal character of the Debt.

57.    Silver State has and continues to rely upon CHACA's incomplete and unsubstantiated proof of the Debt despite the Plaintiffs' efforts to bring this lack of substantiation to Silver State's attention.

58.    Nonetheless, Silver State has continued seeking collection of the Debt despite its awareness that the Debt is being collected in an erroneous amount, and the Plaintiffs have challenged the amount Silver State has directed by CHACA to collect.

59.     Further, Silver State failed to provide the Plaintiffs with all required notices pursuant to 15 U.S.C. §1692g(a), within five days after the initial communication with the Plaintiffs regarding the Debt, Silver state was required to send the Plaintiffs a written notice containing:

(**1**) the amount of the debt;
(**2**) the name of the creditor to whom the debt is owed;
(**3**) *a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;*
(**4**) *a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector*; and
(**5**) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

60.     Silver State's only communication within five (5) days of attempting to collect the Debt was mailed on February 28, 2017 (the "Initial Collection Communication").   This collection communication completely overshadowed Plaintiffs debt "validation" rights and onerously stated that:

> As of February 28, 2017, the total amount overdue including late fees, interest, and penalties is $6,050.00.
>
> Failure to rectify this matter within 30 days of the date of this notice will result in a Violation Lien being recorded against the above-mentioned property.  Substantial charges will be added to your account, which you will be held responsible for paying.
>
> **Please remit payment in full in the form of a money order or cashier's check to:**
>
> 
>
> **Silver State Trustee Services, LLC.**
> **1424 S. Jones Blvd**
> **Las Vegas, NV 89146-1231**
> **This office will not accept cash or personal checks.**
>
> 
>
> If there has been an error made on your account and you can provide proof of such an error, you will need to supply copies to our office within the time limit stated above.

61.     Debt validation does not require "proof of such an error", but only

requires the Plaintiff advise the collector – here, Silver State – that the Debt is disputed.  15 U.S.C. §1692g(a)(3) and (4).

62.    Such overshadowing of the Plaintiffs validation rights rendered the language in Silver State's defective and a violation of 15 U.S.C. §1692g(a)(3) and (4).

63.    As no subsequent written communications were mailed or otherwise provided to the Plaintiffs within five days of the Initial Collection Communication, Silver State violated 15 U.S.C. §1692g(a) in addition to the foregoing other provisions of the FDCPA.

64.    Silver State's efforts to continue collection on the Debt (which is not owed) and was defective *ab initio* results in this suit.

## Plaintiffs Suffered Actual Damages

65.    The Plaintiffs have each suffered and continue to suffer actual damages as a result of Silver State's unlawful collection conduct.

66.    As a direct consequence of Silver State's acts, practices and conduct, the Plaintiffs suffered and continue to suffer damages which are recoverable under the FDCPA resulting from Defendant's illegal conduct.   Plaintiffs have also incurred attorney's fees and costs in bringing this suit.

## **<u>Respondeat Superior Liability</u>**

67.    The acts and omissions of Silver State, and the other debt collectors employed as agents by Silver State who communicated with Plaintiffs as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Silver State.

68.    The acts and omissions by Silver State and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Silver State in collecting consumer debts.

69.    By committing these acts and omissions against Plaintiffs, Silver State and these other debt collectors were motivated to benefit their principal, Defendant Silver State.

70.    Silver State is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Nevada tort law, in their attempts to collect a debt from Plaintiffs.

## **<u>COUNT I</u>**
## **<u>VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692, et seq.</u>**

71.    The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

72.     Silver State's conduct violated 15 U.S.C. § 1692e in that Silver State engaged in false, deceptive or misleading behavior in connection with the collection of a debt.   Specifically, seeking to collect and misrepresenting an amount of a debt which can be collected as discussed above.

73.     Silver State's conduct violated 15 U.S.C. § 1692e(2) in that Silver State misrepresented the amount of the Debt owed by Plaintiffs and attempted to have Plaintiffs pay more than was even legally allowed on the Debt, as discussed above.

74.     Silver State's conduct violated 15 U.S.C. § 1692e(5) in that Silver State threatened to take action against the Plaintiffs which it could not legally take or did not intend to take in collection of a debt.   Specifically, by recording and seeking to enforce a Lien in amount not legally enforceable and seeking to collect a debt in a wrong amount despite being put on notice that the Debt was disputed and subject to numerous legal infirmities.

75.     Silver State's conduct violated 15 U.S.C. § 1692e(10) in that Silver State employed various false representations and deceptive means to collect a debt as enumerated above.

76.     Silver State's conduct violated 15 U.S.C. § 1692f in that Silver State used unfair and unconscionable means to collect a debt and attempted to humiliate and belittle Plaintiffs as Silver State totally disregarded Plaintiffs' numerous efforts

to amicable resolve this dispute, but still moved forward with heavy-handed collection efforts to collect the Debt, including, but not limited to, recording a lien in the wrong amount on the Plaintiffs' home.

77.    Silver State's conduct violated 15 U.S.C. § 1692f(1) in that Silver State attempted to collect an amount not authorized by the agreement between Plaintiffs and Creditor as discussed above.

78.    Silver State's conduct violated 15 U.S.C. § 1692g(a) in that Silver State failed provide the Plaintiffs all required notices pursuant to 15 U.S.C. §1692g(a), within five days after the initial communication with the Plaintiffs regarding the Debt as discussed above; and overshadowed Plaintiffs validation rights.

79.    The foregoing acts and omissions of Silver State constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

80.    The Plaintiffs is entitled to damages as a result of Defendant's violations.

81.    The Plaintiffs has been required to retain the undersigned as counsel to protect their legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs pray that judgment be entered against the Defendant awarding the Plaintiffs:

1.  For actual damages the Plaintiffs have suffered (and continue to suffer) as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. § 1692k(a)(1);

2.  For statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) for each Plaintiffs;

3.  Attorney's fees and costs pursuant to 15 U.S.C. §1692k; and

…

…

…

…

…

…

4. For any other and further relief that the Court may deem just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: February 7, 2019

Respectfully submitted,

<u>/s/ David H. Krieger, Esq.</u>
David H. Krieger, Esq.
Nevada Bar No. 9086
Shawn W. Miller, Esq.
Nevada Bar No. 7825
HAINES & KRIEGER, LLC

Charles L. Geisendorf, Esq.
Nevada Bar No. 6985
CHARLES L. GEISENDORF, LTD.

Attorneys for Plaintiffs
*RYAN REFORMINA AND EFRIN ALEXIS C. BATAYOLA*